1  MARLENE S. MURACO, Bar No. 154240
   mmuraco@littler.com
2  LITTLER MENDELSON
   A Professional Corporation
3  50 West San Fernando Street
   15th Floor
4  San Jose, CA  95113.2303
   Telephone:    408.998.4150
5
   Attorneys for Defendants
6  ESIS, INC., ACE AMERICAN INSURANCE
   COMPANY
7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11 MARIA ABRAHIM,                          Case No.  C07-4014 JCS

12         Plaintiff,                      **DEFENDANT ESIS, INC. AND ACE
                                           AMERICAN INSURANCE COMPANY'S
13         v.                              REPLY MEMORANDUM OF POINTS
                                           AND AUTHORITIES IN SUPPORT OF
14 ESIS, INC., ACE AMERICAN                THEIR MOTION TO COMPEL
   INSURANCE COMPANY,,                     ARBITRATION**
15
           Defendants.
16                                         Date:    February 1, 2008
                                           Time:    9:30 a.m.
17                                         Judge:   Judge Joseph Spero
                                           Dept:    Courtroom A, 15th Floor
18

(CASE NUMBER: C07-4014 JCS)                **DEFTS REPLY MPA ISO MOTION TO
                                           COMPEL ARBITRATION**

## I. INTRODUCTION

In her opposition to Defendants' motion to compel arbitration, Plaintiff argues that the Court should disregard the declaration of Denise Carson because Defendants failed to timely provide their Rule 26 initial disclosures and, alternatively, because Ms. Carson does not expressly state that she has personal knowledge of the facts stated therein. As set forth below, these arguments have no merit because Defendants' failure to provide their disclosures was harmless error and because the content of Ms. Carson's declaration makes it clear that she does, in fact, have personal knowledge of the facts she describes.

Plaintiff then argues that the ACE Arbitration Agreement is procedurally and substantively unconscionable. These arguments are also without merit. Of particular note is the fact that Plaintiff never denies the version of facts set forth in Denise Carson's declaration. In other words, Plaintiff concedes that she was aware of ACE's arbitration policy and, by signing the receipt for the ACE Employee Guide, agreed to its terms. The policy itself is bilateral and fully compliant with California contract law. Accordingly, the Court should grant Defendants' motion to compel arbitration in its entirety.

## II. ARGUMENT

### A. The Court Should Not Disregard The Declaration Of Denise Carson.

#### 1. Defendants' Failure To Complete Its Initial Disclosures Was A Harmless Error.

Plaintiff seeks to avoid the legal effect of her agreement to arbitrate any employment-related claims she has against Defendants on the ground that Defendants failed to complete their Rule 26 initial disclosures in a timely manner. Specifically, Plaintiff argues that because Defendants did not timely disclose relevant witnesses under Rule 26, the Court should not allow Defendants to provide *any* testimony in support of the instant motion and should therefore disregard the declaration of Denise Carson Defendants filed in support of their motion. (Plaintiff's Opposition (Pltf.'s Opp., p. 3.) This argument is without merit because Defendants' failure to timely comply with Rule 26 was harmless error.

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
15th Floor
San Jose, CA  95113.2303
408.998.4150

(CASE NUMBER: C07-4014 JCS)   1.   **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

As explained in detail in the Declaration of Marlene Muraco filed in support of this reply, Ms. Muraco (counsel for Defendants) believed she had forwarded Defendants' Initial Disclosures to Plaintiff's counsel (Constantin Roboostoff) via e-mail on November 26, 2007. (Muraco Decl., ¶ 3.) When Ms. Muraco received Plaintiff's Opposition to Defendants' Motion to Compel Arbitration and read Mr. Roboostoff's assertion that Defendants had never made their initial disclosures, Ms. Muraco attempted to resend the November 26th e-mail to Mr. Roboostoff. In so doing, Ms. Muraco discovered that the e-mail (containing Defendants' initial disclosures) was in her "Drafts" folder in Outlook rather than in her "Sent" folder. (Muraco Decl., ¶ 4.) Ms. Muraco is not sure how this occurred, but the discovery led her to conclude that she had not, in fact, succeeded in sending Defendants' initial disclosures to Mr. Roboostoff on November 26. Upon reaching this conclusion, Ms. Muraco immediately sent an e-mail to Mr. Roboostoff explaining what had happened and attaching Defendants' initial disclosures. (Muraco Decl., ¶¶ 4-5, and Exhibit B thereto.) As a result of this sequence of events, Plaintiff received Defendants' initial disclosures approximately seven weeks late.

While Ms. Muraco regrets her error and has apologized to both Plaintiff and the Court (Muraco Decl., ¶ 6), Ms. Muraco's mistake does not justify barring her clients from submitting any evidence in support of their motion to compel arbitration. This is because Plaintiff was in no way prejudiced by Ms. Muraco's error.

Federal Rule of Civil Procedure 37(c)(1) expressly provides that exclusion of evidence is *not* appropriate where, as here, the failure to "identify a witness as required by Rule 26" was harmless. "Whether a failure is 'harmless' largely depends upon 'whether the omission caused other parties to suffer prejudice....'" *U.S. Axminster v. Chamberlain*, 176 F.R.D. 532, 533 (D.Miss. 1997), *quoting*, 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 37.63 (3d ed. 1997). Plaintiff has not made any attempt to show that she was prejudiced by Defendants' late disclosures. In fact, no such showing is possible.

Defendants did not produce any documents in connection with their initial disclosures – choosing instead to describe the categories of responsive documents that exist. (Muraco Decl., ¶ 6.) Thus, Plaintiff was not deprived of any documents. Furthermore, counsel for Defendant ACE

(CASE NUMBER: C07-4014 JCS)     2.     **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

1  sent Mr. Roboostoff a copy of the ACE Employee Guide Receipt and Agreement signed by Plaintiff
2  as well as a copy of the ACE Arbitration Policy prior to the date Plaintiff's lawsuit was filed. (*Id.*)

3          The only piece of relevant information Plaintiff would have gleaned from
4  Defendants' initial disclosures was the fact that Denise Carson had (unspecified) knowledge
5  regarding the circumstances surrounding the implementation of ACE's and CIGNA's arbitration
6  policies. (Muraco Decl., ¶ 7.) However, Plaintiff has not indicated how having that information
7  before Defendants filed their motion to compel arbitration could have influenced the outcome of
8  Defendants' motion. To the contrary, the content of the declaration Plaintiff filed in opposition to
9  Defendants' motion suggests that advance notice that Ms. Carson had knowledge regarding the
10 arbitration policies would not have helped Plaintiff at all.

11         This is because Plaintiff's declaration in no way contradicts that submitted by Ms.
12 Carson. Plaintiff has not even attempted to challenge Ms. Carson's description of how Plaintiff
13 came to sign the acknowledgement of CIGNA's arbitration policy and/or the ACE Employee Guide
14 Receipt and Agreement. Thus, it is apparent that Ms. Carson testified to facts that were already
15 within Plaintiff's realm of knowledge and Defendants' failure to identify Ms. Carson as a witness in
16 no way compromised Plaintiff's ability to oppose the instant motion. Accordingly, Ms. Muraco's e-
17 mail mistake qualifies as harmless error and Ms. Carson's declaration cannot be excluded under
18 FRCP 37. *See, e.g., Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (trial court
19 did not err when it refused to impose sanctions against party who provided late discovery responses
20 where the other party "was not prejudiced by [the] untimely disclosure"); *Sheets v. Yamaha Motors*
21 *Corp.*, 891 F.2d 533, 539 (5th Cir. 1990) ("We agree that the inability of plaintiff to show how
22 defendants' wrongful conduct [with regard to discovery] caused any harm is a proper basis for
23 denying sanctions."); *Alliance Communs. Techs., Inc. v. AT&T Corp.*, 2007 U.S. App. LEXIS
24 15645, 3-4 (9th Cir. 2007) (trial court did not abuse its discretion in allowing testimony that was
25 based on calculations not disclosed during pretrial discovery in violation of FRCP 26, where the
26 violation of Rule 26 was harmless); *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 196 (4th Cir.
27 2003) ("although [the defendant] does appear to have violated the technical requirements of Rule
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA 95113.2303
408.998.4150

(CASE NUMBER: C07-4014 JCS)    3.    **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

26," because the violation was harmless, "...we see no basis for concluding that the district court abused its discretion in allowing [the defendant] to offer the witnesses and exhibits").

### 2. Ms. Carson's Declaration Is Based Upon Personal Knowledge And Contains Admissible Evidence.

Plaintiff next argues that the Court should disregard Ms. Carson's declaration because it "does not constitute admissible evidence in that it is made by a witness without personal knowledge of the facts stated therein; contains inadmissible hearsay, opinions and conclusions; and does not affirmatively show that the witness would be competent to testify at trial." (Plt.'s Opp., p. 3:22-4:3.) This argument is entirely without merit.

Ms. Carson's declaration indicated that since 1997 she has served in the capacity of Director of Employee Relations for CIGNA Property & Casualty ("CIGNA"), the Director of Employee Relations for ACE, the Assistant Vice President of Human Resources for ACE and the Vice President of Human Resources for ACE. (Declaration of Denise Carson ISO Defendants' Motion to Compel ("Carson Decl."), ¶ 1.) As such, Ms. Carson would obviously have knowledge about the employee policies of both CIGNA and ACE and is certainly competent to authenticate the CIGNA and ACE arbitration policies, as she did in paragraphs 4 and 9 of her declaration. Furthermore, Ms. Carson was personally "responsible for ensuring that the ACE Employee Guide was distributed to all ACE employees." (Carson Decl., ¶ 6.) She is thus more than competent to testify about that process, as she did in paragraphs 6-10 of her declaration. (Carson Decl., ¶¶ 6-10.) Finally, as the Vice-President of Human Resources and a long-time ACE employee, Ms. Carson was clearly qualified to testify about the steps ACE employees had to take to access the ACE Employee Guide from their desktop, as she did in paragraph 11 of her declaration. (Carson Decl., ¶ 11.)

Although Ms. Carson's competence as a witness is evident from the face of her declaration, out of an abundance of caution Defendants have submitted a second declaration by Ms. Carson, in which she testifies that she has personal knowledge of the facts set forth in her initial declaration. (Declaration of Denise Carson ISO Defendants' Reply To Plaintiff's Opposition To Motion To Compel Arbitration ("Carson Reply Decl."), ¶ 3.) As Ms. Carson has personal

(CASE NUMBER: C07-4014 JCS)    4.    **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA 95113.2303
408.998.4150

knowledge of all the facts, circumstances and events described in her initial declaration, Plaintiff's "hearsay," "opinion" and other objections are without merit and must be disregarded by the Court.

### B. The ACE Arbitration Agreement Is Not Unconscionable.

Plaintiff contends that the ACE Arbitration Agreement is unenforceable because it is unconscionable. (Pltf.'s Opp., p. 5-8.) Unconscionability is a defense to the enforcement of a contract. *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 820 (1981). Plaintiff, as the party asserting this defense, has the burden of proving it. *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 972 (1997) ("a party opposing the petition [to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense"); *Szetela v. Discover Bank,* 97 Cal.App.4th 1094, 1099 (2002), *cert. denied,* 537 U.S. 1226 (2003). Plaintiff has not satisfied that burden.

Unconscionability is not easily proved, and the bar may not be lowered because the contract at issue is an arbitration agreement. Unconscionabilty has two elements: a procedural element and a substantive element. *Armendariz v. Foundation Health Psychcare Servs.,* 24 Cal.4th 83, 114 (2000); *Jones v. Citigroup, Inc.,* 135 Cal.App.4th 1491 (2006). Both "must . . . be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Armendariz,* 24 Cal.4th at 114. Furthermore, the two concepts bear an inverse relationship to each other – the less evidence of procedural unconscionability there is, the more substantively oppressive the contract terms must be to warrant a finding of overall unconscionability. *Id*.

In this case, the *only* factor suggesting procedural unconscionability is the fact that the Agreement was a contract of adhesion. Thus, significant evidence of substantive unconscionability is required to justify a finding that the Agreement was unenforceable. As Plaintiff failed to present such evidence, Defendants' Motion to Compel Arbitration must be granted.

#### 1. The Agreement's Procedural Unconscionability Is Minimal.

"'Procedural unconscionability' concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United HealthCare Services,*

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
15th Floor
San Jose, CA 95113.2303
408.998.4150

(CASE NUMBER: C07-4014 JCS)   5.   **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

1  *Inc.* (1999) 70 Cal.App.4th 1322, 1329; *American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386,
2  1390.  Procedural unconscionability focuses on whether there is "oppression" arising from an
3  inequality of bargaining power or "surprise" arising from buried terms in a complex printed form.
4  *McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 87; *Fittante v. Palm Springs*
5  *Motors* (2003) 105 Cal.App.4th 708, 722-723.

6  Plaintiff argues that the ACE Agreement was procedurally unconscionable, in part,
7  because accepting the Agreement was a "take it or leave it" employment condition. (Pltf.'s Opp., p.
8  5.) In other words, the Agreement was a contract of adhesion. *Flores v. Transamerica HomeFirst,*
9  *Inc.,* 93 Cal.App.4th 846, 853 (2001) (A contract of adhesion is "a standardized contract, imposed
10 upon the subscribing party without an opportunity to negotiate the terms.")  "A finding of a contract
11 of adhesion is essentially a finding of procedural unconscionability." *Id*. However, if such a
12 showing were sufficient to render an arbitration agreement unenforceable, it would be virtually
13 impossible for an employer to implement an arbitration program among its employees.  That is not
14 the case. *See, e.g., Lagatree v. Luce, Forward, Hamilton & Scripps*, 74 Cal.App.4th at 1122-1123,
15 1127-1128 (1999) (stating that "[a]n employee's rights to a jury trial and a judicial forum can be
16 validly waived by agreement, even where the waiver is required as a condition of employment" and
17 holding that it is not a violation of public policy for an employer to terminate an employee for
18 refusing to execute such a pre-dispute arbitration agreement).

19 The assertion by Plaintiff that the ACE Arbitration Agreement had other aspects of
20 procedural unconscionability is without merit.  Specifically, Plaintiff argues that the arbitration
21 provisions were "so located as to easily escape attention." (Pltf.'s Opp., p. 6:18-19.) As support for
22 this assertion, Plaintiff notes that "although the CIGNA receipt, dated November 9, 1994,
23 specifically references its arbitration policy, the ACE receipt, dated March 15, 2000, does not" and
24 contends that "in order to ascertain one's legal rights and remedies, an ACE employee ha[d] to go
25 on-line, review the Guide, and then click on to several icons before actually getting to the provisions
26 dealing with arbitration." (Pltf.'s Opp., p. 6.) A review of Ms. Carson's declaration, however,
27 makes it clear that ACE was very straightforward with its employees about the fact that the company
28 had a policy of binding arbitration.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA  95113.2303
408.998.4150

(CASE NUMBER: C07-4014 JCS)          6.          **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

Those employees, like Plaintiff, who came to ACE from CIGNA were already parties to a binding arbitration agreement when they were hired by ACE. (Carson Decl., ¶ 3.) In fact, Plaintiff expressly acknowledged that policy in writing in 1994. (Carson Decl., Exh. A.) When ACE acquired CIGNA in 1999, the former CIGNA employees were informed that the CIGNA dispute resolution policies would remain in place during the transition to ACE. (Carson Decl., ¶ 5.) Plaintiff does not deny that she received that communication. (Pltf.'s Opp., *passim*; Declaration of Maria Abrahim ("Abrahim Decl."), *passim*.)

The ACE arbitration policy was issued in 2000 and it was nearly identical to the CIGNA policy that preceded it. (Compare Carson Decl., Exhibit B with Carson Decl., Exhibits G, H and I.) The policy was issued as part of the ACE Employee Guide, which employees were required to acknowledge in writing. In order to print the acknowledgement form, Plaintiff had to access the on-line Introduction to the Guide which expressly instructed her to "read the sections below called About This Guide and What's In This Guide." (Carson Decl., Exhibit F.) The latter section informed employees that they were "agree[ing]...not [to] go to court to decide any employment-related claim" but rather that all such claims would be resolved by "a neutral third-party arbitrator." (*Id*.) In short, far from hiding the existence of the arbitration policy, ACE set it up so that anyone who followed instructions was expressly informed that they were required to submit their disputes to binding arbitration.

More significantly, however, ***Plaintiff does not assert that she was unaware of the ACE Arbitration Policy. Nor does Plaintiff assert that she was unaware that by signing the ACE Employee Guide Receipt she was agreeing to arbitrate her employment-related disputes against ACE.*** (Pltf.'s Opp., *passim*; Declaration of Maria Abrahim ("Abrahim Decl."), *passim*.) Presumably, this is because Plaintiff was one of the ACE employees who followed instructions and was therefore aware that the ACE Employee Guide contained a policy of binding arbitration.

Plaintiff's assertion that no one at ACE "explain[ed] to [her] the provisions in the ACE Employee Guide dealing with employment dispute mediation and arbitration" is equally unavailing, particularly since she does not allege that she did not understand the provisions in question. (Abrahim Decl., ¶ 3.) In any event, it is clear that "[n]o law requires that parties dealing at

arm's length have a duty to explain to each other the terms of a written contract, particularly where, as here, the language of the contract expressly provides for the arbitration of disputes arising out of the contractual relationship." *Brookwood v. Bank of America,* 45 Cal.App.4th 1667, 1674-1675 (1996); *accord, 24 Hour Fitness, Inc. v. Superior Court,* 66 Cal.App.4th 1199, 1215 (1998).

Thus, the only evidence of procedural unconscionability is that which is attendant in *every* contract of adhesion. Plaintiff has therefore "only shown a low level of procedural unconscionability because," as discussed above, "the elements of surprise or, a fortiori, misrepresentation were not present." *Id*. at 730. "In order to [invalidate the Agreement], therefore, [Plaintiff] must have established a *high* level of substantive unconscionability." *Id*. Plaintiff failed to do so.

### 2. Plaintiff Cannot Show That The Agreement Is Substantively Unconscionable.

Substantive unconscionability focuses on whether the terms are "one sided" or "overly harsh." *Armendariz,* 24 Cal.4th at 114. The test for substantive unconscionability is whether the contract terms are "so extreme" or "unfair" as to "shock the conscience." *California Grocers Assn. v. Bank of America,* 22 Cal.App.4th 205, 214-215 (1994); *accord, 24 Hour Fitness, Inc., supra,* 66 Cal.App.4th at 1213. This heightened standard serves a necessary function: "With a concept as nebulous as 'unconscionability,' it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable." *American Software, Inc. v. Ali,* 46 Cal.App.4th 1386, 1391 (1996).

Plaintiff argues that the ACE Agreement is substantively unconscionable because it is objectionably one-sided, it bars "class-wide" arbitration, it requires that Plaintiff-employees pay a $100.00 filing fee and because ACE retained the right to modify the arbitration policy. These arguments are without merit.

#### a. The Agreement Is Not One-Sided.

Plaintiff cites the case of *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) (*Ingle I*) for the proposition that a one-sided arbitration agreement is substantively

(CASE NUMBER: C07-4014 JCS) 8. **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA 95113.2303
408.998.4150

1  unconscionable.  The arbitration agreement at issue in *Ingle* applied "only to 'any and all
2  employment-related legal disputes, controversies or claims of an Associate,' thereby limiting its
3  coverage to claims brought by employees." *Ingle I*, 328 F.3d at 1173.  By the terms of that
4  arbitration agreement, therefore, the employer did "not agree to submit to arbitration claims it might
5  hypothetically bring against employees." *Id*.  The agreement was thus found to be substantively
6  unconscionable because it was lacking the "modicum of bilaterality" required under California
7  contract law. *Id.* at 1174, *citing Armendariz, supra,* 24 Cal.4th at 117-118.

8            In contrast, the ACE Arbitration Agreement requires arbitration of claims brought by
9  both employees *and* ACE.  The policy specifically states that it "prevents both ACE and the
10 employee from going to court over employment-related disputes" and confirms that "[i]f ACE has a
11 legal claim against an employee, ACE must utilize the Employment Dispute Arbitration Rules and
12 Procedures that are a part of this policy, rather than go to court." (Carson Decl., Exhibit I., p. 1 and
13 2.)  Unlike the arbitration agreement at issue in *Ingle I*, therefore, the ACE Agreement is truly
14 mutual and is therefore sufficient under California contract law.  *See, e.g., Armendariz, supra,* 24
15 Cal.4th at 120 (arbitration agreement is sufficiently mutual if it requires both parties "to arbitrate all
16 claims arising out of the same transaction or occurrence or series of transactions"); *Smith v. Sara Lee*
17 *Fresh, Inc.*, 2007 U.S. Dist. LEXIS 94288, 15-16 (D. Cal. 2007) (arbitration agreement not
18 unconscionable where "[b]y its clear terms, the provision has equal binding effect on both parties
19 and sets forth procedures which apply equally to both sides"); *Lambright v. Fed. Home Loan Bank of*
20 *San Francisco*, 2007 U.S. Dist. LEXIS 91075 (D. Cal. 2007) (where "both employees and the
21 [employer] must submit any claim against the other to arbitration...the obligation to arbitrate is
22 mutual" and the arbitration agreement is not substantively unconscionable due to lack of
23 bilaterality); *Sinclair v. Servicemaster Co.*, 2007 U.S. Dist. LEXIS 84206 (D. Cal. 2007) (mutuality
24 exists where, unlike in *Armendariz, supra,* "[b]oth parties are held to arbitration"); *Miyasaki v. Real*
25 *Mex Rests., Inc.*, 2006 U.S. Dist. LEXIS 62787, 6-8 (D. Cal. 2006) (Noting that "the *Armendariz*
26 court effectively recognized two situations in which arbitration agreements between employers and
27 employees might lack the requisite degree of bilaterality to justify their enforcement": 1) where they
28 are "explicitly non-mutual [because] the employer is expressly excepted from arbitrating any claims

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA  95113.2303
408.998.4150

(CASE NUMBER: C07-4014 JCS)    9.    **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

it might have against the employee"; and 2) when "the agreement specifically excludes...types of disputes that would be brought by employers" and concluding that an arbitration agreement that is "bilateral on its face" does not fit within either category and is thus not unconscionable).

### b. The Prohibition Against Class-Wide Arbitration Is Not Unconscionable.

Plaintiff next argues that the ACE Agreement is unconscionable because it bars class-wide arbitration. (Pltf.'s Opp., p. 7.) The court in *Ingle I*, *supra,* did conclude that a "bar on class-wide arbitration [was] patently one-sided and...substantively unconscionable" under California law. 328 F.3d at 1175. However, *Ingle I* was decided in 2003, four years before the California Supreme Court held that a bar on class-wide arbitration would be enforceable in some circumstances and did not therefore *per se* render an arbitration agreement unconscionable. *Gentry v. Superior Court*, 42 Cal.4th 443, 462-463, 466 (2007). Simply stated, it is now clear that a ban on class-wide arbitration is not "invalid on [its] face," which means that the conclusion reached by the Ninth Circuit in *Ingle I* that such a provision automatically renders an arbitration agreement unconscionable is no longer good law.

In the instant case, the Court need not consider whether the class action ban is appropriate or not because Plaintiff is not seeking to pursue a class action. Accordingly, that provision is irrelevant to the instant analysis and does not provide a basis for invalidating the Agreement.

### c. The Filing Fee Is The Type Of Expense Plaintiff Would Be Required To Pay If She Were Pursuing Her Case In Court.

Under *Armendariz*, *supra,* "the arbitration agreement or arbitration process cannot require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court. 24 Cal.4th at 110-111. Thus, the employer must pay all *types* of costs unique to arbitration. *Id*. at 113. With regard to costs, the ACE Arbitration Policy provides as follows:

> ACE will pay all costs of arbitration in those instances in which it is the party demanding arbitration. In the event an employee demands

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA 95113.2303
408.998.4150

(CASE NUMBER: C07-4014 JCS)    10.    **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

> arbitration, the employee must also send with the demand letter a check or money order for $100 made payable to ACE American Insurance Company. The $100.00 sent by the employee will be used to pay a part of the administrative fees charged by the American Arbitration Association (AAA), the organization that will be providing arbitration services. The remaining fees charged by AAA will be paid by ACE.
>
> * * * *
>
> All other fees, expenses and costs of the arbitration, such as the arbitrator's travel and other expenses, costs for any witness produced at the direction of the arbitrator, and the expenses of a representative of AAA, if any, shall be paid completely by ACE....

(Carson Decl., Exhibit I.) The Agreement thus requires nothing more than that the employee pay a portion of the filing fee – which is similar to the *type* of expense an employee would have to incur if she filed her lawsuit in court.

Plaintiff contends that *Ingle I* reached a contrary conclusion, but there was no indication in that case that the $75 fee the employee was required to pay to his employer was going to be put towards the AAA filing fee. *Ingle, supra,* 328 F.3d at 1177. In fact, the court in *Ingle* acknowledged that a "true filing fee might be appropriate under *Armendariz*." *Id*. As the $100 paid by the employee is expressly put towards the AAA filing fee, the Agreement is consistent with *Armendariz* and enforceable. *See, e.g., Lambright, supra,* 2007 U.S. Dist. LEXIS 91075, 23-24 (arbitration agreement that required the employee to pay the same filing fees he would have had to pay if he had filed in court "complie[d] with the strictures of *Armendariz* and [was] not unconscionable").

### d. ACE Did Not Retain The Right To Unilaterally Modify The Arbitration Policy At Any Time.

Plaintiff's final argument is that the Arbitration policy is unconscionable because it gives ACE the right to unilaterally revise the policy without notice. (Pltf.'s Opp., p. 8.) In support of this argument, Plaintiff quotes the portion of the ACE Employee Guide under the heading "What's In This Guide," that states that "ACE reserves the right to change any or all policies, programs and benefit plans in whole or in part at any time, with or without notice to you." This

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
15th Floor
San Jose, CA 95113.2303
408.998.4150

(CASE NUMBER: C07-4014 JCS)    11.    **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

1  quote is misleading, however, because it is taken out of context. The entire "What's In This Guide"
2  section actually states as follows:

> This resource contains general policies and program descriptions. Your manager may provide you with information about more detailed procedures. Descriptions and information about benefit plans are usually distributed directly to you at your home or at your work location. The benefit plans, not this guide, set forth and control the terms of your benefits. As circumstances and competitive conditions change, ACE reserves the right to change any or all policies, programs and benefit plans in whole or in part at any time, with or without notice to you. Such changes can only be made in writing. However, any benefit entitlement to which you have bested rights as of the date of the change will not be taken away as a result of any change.
>
> Although this guide contains descriptions of numerous ACE policies, procedures, programs and benefits, there are only two terms of your employment. They are very important. The first is that your employment is not for any fixed period of time....The second is that you agree that you will not go to court to decide any employment-related claim. Instead, you must resolve all employment-related legal disputes by going to a neutral third-party arbitrator (see the <u>Employment Dispute Arbitration Policy</u>). Nothing in this guide changes, modifies or alters these two terms of your employment.
>
> ***Regardless of what anyone may have told you or you may have read before you were hired or after, these two terms of your employment are the full and complete agreement between you and the Company concerning these terms and cannot be changed except by a written agreement between you and your employer signed by the President of the Company.***

18  (Carson Decl., Exhibit F, emphasis in original). Taken in context, therefore, it is clear that the
19  portion of the Guide that Plaintiff quoted pertains to ACE's right to modify its benefit plans.
20  However, the Company made it clear that the policy of binding arbitration was a "term of
21  employment" and could only be changed in a written agreement between the employee and ACE
22  that was signed by the President of the Company.
23      The ACE Agreement is thus clearly distinguishable from the provision held to be
24  substantively unconscionable by the court in *Ingle I*. That provision allowed the employer to "alter
25  or terminate the [arbitration Agreement]" on "December 31st of any year upon giving 30 calendar
26  days written notice" to the employees. In other words, the employer in *Ingle I* had reserved the right
27  to unilaterally cancel the Arbitration policy. ACE did not reserve that right and the portion of the
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA 95113.2303
408.998.4150

(CASE NUMBER: C07-4014 JCS)   12.   **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

Employee Guide Plaintiff quoted therefore does not provide a basis for invalidating the Arbitration Agreement.[1]

### 3. Assuming, *Arguendo*, That The Agreement Contains Improper Provisions, They Are Severable And The Remainder Of The Agreement Must Be Enforced.

In deciding whether an unconscionable provision should be severed or an entire contract invalidated, the *Armendariz* court stated that "[i]f the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Armendariz*, *supra,* 24 Cal.4th at 124-125; *see also Circuit City Stores v. Adams,* 279 F.3d 889, 895 (9th Cir. 2002) ("courts have discretion to sever an unconscionable provision or refuse to enforce the contract in its entirety").

In the instant case, the Arbitration Agreement is bilateral and eminently fair. In the event that the Court concludes that one or two of the collateral provisions in the Agreement are unconscionable, it should sever those provisions rather than render the entire agreement unenforceable. *McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76 is instructive. In *McManus*, the plaintiff argued that the arbitration agreement at issue was both procedurally and substantively unconscionable due in part to the presence of a fee-splitting provision. Rejecting that argument, the *McManus* court upheld the agreement, noting that the plaintiff was unable to:

> Demonstrate the existence of additional substantive unconscionable provisions in the arbitration [agreement] or that the agreement [is] permeated with unfairness. Thus, *with the exception of the cost provision, the arbitration agreement [is] otherwise enforceable. The arbitration agreement[is] not so "permeated" with unconscionable provisions that it cannot be saved.* [citations omitted]. Accordingly, the unconscionable provision requiring payment of the fees can be severed from the arbitration agreements [citations omitted].

109 Cal.App.4th at 102 (emphasis added).

The reasoning in *McManus* applies in the instant case where, as set forth above, due to the minimal level of procedural unconscionability present, a  high level of substantive

---

[1] It bears noting that while the court in *Ingle I* held that the provision allowing the employer to unilaterally modify the arbitration agreement was substantively unconscionable, the court drew "no conclusion as to whether [that] term, by itself, render[ed] the contract unenforceable." 328 F.3d at 1179, n. 23.

LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street
15th Floor
San Jose, CA  95113.2303
408.998.4150

(CASE NUMBER: C07-4014 JCS)    13.    **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**

unconscionability is required to invalidate the Agreement. The Agreement is not so permeated with substantive unconscionability that it could not be saved by severing any objectionable provision. *Id;* *see also e.g., Fittante v. Palm Springs Motors, Inc.,* 105 Cal.App.4th 708, 726-727 (2003) (severance appropriate where agreement not permeated by unconscionability).

### III. CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court issue an Order granting Defendants' motion to compel arbitration in its entirety.

Dated: January 11, 2008

/s/
MARLENE S. MURACO
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendants
ESIS, INC., ACE AMERICAN INSURANCE COMPANY

Firmwide:84018553.1 035894.1044

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
50 West San Fernando Street
15th Floor
San Jose, CA 95113.2303
408.998.4150

(CASE NUMBER: C07-4014 JCS)    14.    **DEFTS REPLY MPA ISO MOTION TO COMPEL ARBITRATION**