UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ABRAHIM,<br><br>          Plaintiffs,<br><br>     v.<br><br>ESIS, INC., ET AL.,<br><br>          Defendants.<br>_____/ | Case No. C-07-04014 JCS<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING ACTION PENDING ARBITRATION [Docket No. 15]** |

## I. INTRODUCTION

Plaintiff filed this employment discrimination action on August 6, 2007. Defendants now bring a Motion to Compel Arbitration (the "Motion") based on a written arbitration agreement. The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b). The hearing currently scheduled for February 1, 2008, is VACATED. For the reasons stated below, the Motion is GRANTED.

## II. BACKGROUND

### A. Facts

Maria Abrahim was employed by CIGNA Property and Casualty ("CIGNA") from August 1990 until July 1999, when CIGNA was acquired by Defendant Ace American Company ("ACE") and consequently Abrahim became an employee of ESIS, a wholly-owned subsidiary of ACE. Declaration of Denise Carson in Support of Defendants ESIS, Inc., and Ace American Company's Motion to Compel Arbitration ("Carson Motion Decl."), ¶ 2. CIGNA had a mandatory arbitration policy. Carson Decl., Ex. B. On November 9, 1994, Abrahim signed a form acknowledging that she had received a copy of this policy. Carson Decl., Ex. A.

1  When ACE acquired CIGNA, it adopted an arbitration policy of its own, which was
2 described in the ACE Employee Guide. Carson Decl., ¶ 6. Vice-President of Human Resources
3 Denise Carson was responsible for distributing the Employee Guide to all ACE employees,
4 including ESIS employees. Carson Decl., ¶ 6. According to Carson, she sent an announcement to
5 all ACE employees directing them to the on-line ACE Employee Guide via an Introduction Page.
6 Carson Decl., ¶ 8. The Introduction Page, in turn, contained the following text:

> Although this guide contains descriptions of numerous ACE policies, procedures, programs and benefits, there are only two terms of your employment. They are very important. The first is that your employment is not for any fixed period of time. . . . The second is that you agree that you will not go to court to decide any employment related claim. Instead, you must resolve all employee-related legal disputes by going to a neutral third-party arbitrator.

11 Carson Decl., Ex. F. This text was followed by a link to ACE's arbitration policy. *Id*. In addition,
12 the Introduction explained that all employees were required to print out a form (provided via a link
13 to the Introduction) acknowledging that they had received and reviewed the Employee Guide. *Id*.
14 Specifically, the form stated as follows:

> This is to acknowledge that I have received and will take the time to review the ACE Employees Guide available to me on ACE's intranet site. I agree that it is my responsibility to read the Employee Guide and to understand and abide by the rules, policies, procedures and standards set forth in the Guide.

18 Carson Decl., Ex. J. Abrahim signed the Receipt and Agreement form on March 15, 2000.
19  The Arbitration Policy applies to claims by both employees and ACE and covers "all
20 employment-related disagreements and problems that concern a right, privilege or interest
21 recognized by applicable law . . ." Carson Decl., Ex. I. Where an employee demands arbitration,
22 ACE will pay the fees of the American Arbitration Association, except for a $100 payment by the
23 employee to ACE that is required to initiate arbitration. *Id*., Section 1. According to the Rules and
24 Procedures of the Arbitration Policy, this $100 payment "will be used to pay a part of the
25 administrative fees charged by the American Arbitration Association (AAA), the organization that
26 will be providing arbitration services." *Id*. The policy does not permit class action claims. *Id*. The
27 policy provides that "[t]he arbitration process may be changed in writing by ACE. No change will

2

affect a party who has already started the arbitration process at the time the change is made." *Id.*, Section 28.

### B. The Complaint

Plaintiff filed this action on August 6, 2007, alleging that she was terminated on the basis of her marital status. She asserts two claims: 1) termination in violation of public policy under the California Fair Housing and Employment Act (FEHA); and 2) unpaid wages due under the California Labor Code, based on an alleged earned bonus that Defendants failed to pay when Plaintiff was terminated.

### C. Motion to Compel Arbitration

In the Motion, Defendants argue that Plaintiff is required to arbitrate her claims because there was an agreement to arbitrate that covers her claims. With respect to Plaintiff's FEHA claim, in particular, Defendants assert that the arbitration agreement meets the requirements of California law, set forth in *Armendariz v. Found. Healthcare Psychare Servs., Inc.*, 24 Cal. 4th 83, 90-91 (2000), because it permits Plaintiff to "vindicate . . . her statutory rights." Defendants argue further that pending arbitration, the Court should stay this action pursuant to the Federal Arbitration Act, 9 U.S.C. § 3.

In her Opposition, Plaintiff argues that the Motion should be denied because: 1) Defendants failed to provide their initial disclosures to Plaintiff by November 26, 2007, the date set forth in the Court's Case Management and Pretrial Order; 2) the declaration of Denise Carson contains inadmissible hearsay and does not show that Carson is competent to testify to the contents of the declaration; and 3) the arbitration policy should not be enforced because it is procedurally and substantively unconscionable.

In their Reply, Defendants do not dispute that their initial disclosures were untimely, conceding that they erroneously failed to send to Plaintiff their initial disclosures and only learned of the problem when they received Plaintiff's Opposition. *See* Declaration of Marlene Muraco in Support of Defendant ESIS, Inc. and ACE American Insurance Company's Reply to Plaintiff's Opposition to Motion to Compel Arbitration ("Muraco Reply Decl."), ¶ 4. At that point, Defendants provided their initial disclosures to Plaintiff. *Id.* Defendants argue, however, that their failure to

3

provide the initial disclosures by November 26, 2007, resulted in no prejudice to Plaintiff and does not warrant denial of the Motion as a sanction. Defendants further assert that the Carson Declaration is admissible and provide an additional declaration by Carson stating that the facts stated in the earler declaration were based on her personal knowledge. Finally, Defendants argue that the agreement is not unconscionable and should be enforced.

## III.   ANALYSIS

### A.   Admissibility of Carson Declaration

Plaintiff objects to the Carson Declaration on the ground that it is not based on personal knowledge. Plaintiff's objection is overruled. The statements in Carson's declaration are within the scope of her job responsibilities as Vice-President of Human Resources for ACE and, therefore, based on personal knowledge. *See also* Declaration of Denise Carson in Support of Defendant ESIS, Inc. and Ace American Insurance Company's Reply to Plaintiff's Opposition to Motion to Compel Arbitration ("Carson Reply Decl."). The Court concludes that the Carson Declaration is admissible.

### B.   Failure to Make Initial Disclosures on a Timely Basis

Plaintiff asserts that the Motion to arbitrate should be denied because Defendants did not make their initial disclosures by November 26, 2007, as required by this Court's order. Plaintiff has failed to identify any prejudice that arose from Defendants' late disclosures. Accordingly, the Court declines to deny the Motion as a discovery sanction.

### C.   Enforceability of Arbitration Agreement

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A defendant who is a party to a written arbitration agreement that falls within the scope of the FAA may bring a motion in federal district court to compel arbitration and stay the proceeding pending resolution of the arbitration. 9 U.S.C. § 3. The FAA "'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an

arbitration agreement has been signed.'" *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Thus, the role of the court is limited to determining: 1) whether a valid agreement to arbitrate exists; and 2) whether the agreement encompasses the dispute at issue. *Id.*

Plaintiff does not dispute that her claims fall within the scope of the arbitration. Rather, she argues that the arbitration policy should not be enforced because it is substantively and procedurally unconscionable and therefore invalid. The Court concludes that Defendants' arbitration policy is enforceable under the facts of this case but that the $100 fee is not enforceable.

In determining whether there is a valid agreement, state law affirmative defenses, including unconscionability, apply. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). Under California law, an arbitration agreement is unconscionable if it is both procedurally and substantively unconscionable. *Id.* (citing *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002); *Armendariz v. Found. Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 102 (2000)). A contract may be procedurally unconscionable if it involves oppression or surprise. *Id.* at 1171. A contract is oppressive where it results from "an inequality of bargaining power [that] results in no real negotiation and an absence of meaningful choice." *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997). For example, in *Ingle*, the court concluded that the arbitration agreement was procedurally unconscionable because of the inequality of bargaining power between the employer and the potential employee, noting that job applicants could not modify the terms of the agreement, but rather, were required to either take it or leave it. 328 F.3d at 1171. A contract is substantively unconscionable where it is "'so one-sided as to shock the conscience.'" *Id.* (citing *Kinney v. United Health Care Servs., Inc.*, 70 Cal. App. 4th 1322, 1330 (1999). It is the burden of the party opposing arbitration to establish that the arbitration agreement is unconscionable. *Crippen v. Central Valley RV Outlet, Inc.*, 124 Cal. App. 4th 1159, 1164 (2004).

Where an agreement contains an unconscionable provision, the court has the discretion, under California law, to sever that provision and enforce the remainder of the agreement. *Ingle*, 328 F.3d at 1180 (citations omitted). However, where the "central purpose of the contract is tainted with illegality," the court may refuse to enforce the contract in its entirety. *Id.* (quoting *Armendariz*, 24

5

Cal. 4th at 124).

### 1. Procedural Unconscionability

Plaintiff argues that the arbitration agreement ACE seeks to enforce is procedurally unconscionable. The Court agrees.

The Ninth Circuit, applying California law, has repeatedly found that arbitration agreements such as the one at issue here, in which the employee must sign the agreement as a condition of employment, are adhesion contracts and therefore procedurally unconscionable. *See Ingle*, 328 F.3d at 1170. Defendants do not dispute that the arbitration agreement is a "take it or leave it" employment condition. Reply at 6. As such, it is procedurally unconscionable.

### 2. Substantive Unconscionability

Plaintiff points to three provisions that she asserts render ACE's Arbitration Policy substantively unconscionable: 1) ACE's right to modify the policy at will; 2) the $100 fee that employees are required to pay to initiate arbitration; and 3) the prohibition on class actions. Defendants argue that these provisions are not one-sided and note that the Arbitration Policy applies to claims by both employees and ACE, distinguishing this policy from arbitration agreements that have been found to be substantively unconscionable. The Court addresses each of the provisions that Plaintiff argues is substantively unconscionable.

#### a. ACE's Right to Modify the Policy

Section 28 of the Arbitration Policy Rules and Procedures provides that "[t]he arbitration process may be changed in writing by ACE." Carson Decl., I. It goes on to state, however, that "[n]o change will affect a party who has already started the arbitration process at the time the change is made." *Id*. In addition, in the description of the Arbitration Policy, it is stated that the Arbitration Policy "cannot be changed except in writing by the assistant vice president, ACE INA employee relations." *Id*. Although Section 28, on its face, allows ACE to change the arbitration policy unilaterally, the Court does not find that it is substantively unconscionable. Under California law, this provision carries with it a duty to exercise the right to modify the policy "fairly and in good faith," and therefore, the provision is not so one-sided as to shock the conscience. *See Lambright v. Fed. Home Loan Bank of San Francisco*, 2007 WL 4259552 (N.D. Cal. Dec. 3, 2007) (finding that

6

provision allowing employer to modify arbitration policy was not substantively unconscionable because of employer's duty to exercise right fairly and in good faith, citing *24 Hour Fitness v. Superior Court*, 66 Cal. App. 4th 1199, 1214 (1998)).  The Court further notes that the potential for unfairness is significantly reduced by the fact that ACE may not change the policy as to a pending arbitration.  Therefore, the Court concludes this provision is not substantively unconscionable.

### b. The $100 Fee

In *Armendariz*, the California Supreme Court held that "the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court."  24 Cal. 4th at 110.  On this basis, the Ninth Circuit held in *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1177 (9th Cir. 2003) that a provision requiring employees to pay $75 directly to Circuit City in order to initiate arbitration against Circuit City was unconscionable.  The court rejected Circuit City's characterization of the fee as a "filing fee," pointing out that the fee was paid directly to Circuit City rather than to the arbitration service and thus, was not a true filing fee.  *Id*.  The court explained, "[i]t thus appears that the employee is required to pay Circuit City for the privilege of bringing a complaint. . . . Moreover, by requiring employees to pay the fee to the very entity against which they seek redress, Circuit City may very well deter employees from initiating complaints."  *Id*.

Here, the fee requirement suffers the same flaw as the provision that was at issue in *Ingle*, namely, that it is paid directly to ACE rather than to the arbitration service and thus, it is not a true filing fee.  The fact that the $100 fee is, according to the Arbitration policy, put towards "administrative fees" charged by the AAA, does not remedy this deficiency because it does not ameliorate the problems described in *Ingle*.  Nor does it transform the payment into a "filing fee."  Therefore, the Court concludes that this provision is substantively unconscionable under *Armendariz*.  The Court notes that in *Lambright*, on which Defendants rely, the provision at issue did not violate *Armendariz* because it expressly provided that the employee's payment would not exceed what the employee would have had to pay if the action had been filed in court and further provided that the arbitrator would make an express finding as to what this amount would have been. 2007 WL 4259552 at *8.  ACE has not included such protections in its arbitration policy.

### c.    **Class Action Provision**

ACE's arbitration agreement prohibits class actions. California courts have widely recognized that prohibitions on class actions, especially in the context of an agreement of adhesion such as this one, may be substantively unconscionable. *See Gentry v. Superior Court*, 42 Cal. 4th 443, 453-55 (2007). In *Gentry*, however, the court made clear that the question of whether a class action waiver is enforceable depends upon a factual inquiry to determine whether or not, in light of the claims being asserted, a class action will be more effective or practical than individual litigation or arbitration. *Id*. at 463. Thus, a class action waiver in an arbitration policy is not per se invalid. *Id*. at 466. Rather, such a waiver will only be invalidated "after the proper factual showing." *Id*. As Plaintiff does not seek to maintain a class action and has made no showing that the claims she seeks to assert would be more effectively addressed in the context of a class action, the Court concludes that it would be inappropriate to invalidate this provision on the basis of substantive unconscionability. In reaching this conclusion, the Court makes no finding as to whether the provision might be found substantively unconscionable in another context. It simply finds that this provision does not render ACE's arbitration policy unenforceable as to Plaintiff's claims.

### 3.    **Severability**

As discussed above, where an arbitration agreement is found to be procedurally unconscionable and to contain provisions that are substantively unconscionable, the court has discretion to sever the objectionable provisions or, where the "central purpose of the contract is tainted," to refuse the enforce the entire agreement. Here, the $100 fee provision does not render ACE's arbitration policy so one-sided as to merit invalidating the policy. Rather, the Court concludes that the provision should be severed. The remainder of the arbitration policy may be enforced.

**III.   CONCLUSION**

For the reasons stated above, the Motion is GRANTED.  Plaintiff's claims shall be submitted to arbitration pursuant to Defendants' arbitration policy.  However, the provision of the Arbitration Policy requiring payment of a $100 fee to ACE shall not be enforced.  In the interim, this action is STAYED.  The parties shall notify the Court when a final decision has been reached in the arbitration process.  In the meantime, the Clerk is instructed to administratively close the file in this case.

IT IS SO ORDERED.

Dated: January 25, 2008

JOSEPH C. SPERO
United States Magistrate Judge

9